IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06CV00130

| | |
|---|---|
| MOREHEAD ASSOCIATES, INC., | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| INTUITIVE MANUFACTURING SYSTEMS, INC., | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court upon Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, to transfer venue to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

**I. BACKGROUND**

Plaintiff Morehead Associates, Inc. ("Morehead") is a North Carolina corporation with offices in Charlotte, North Carolina. Defendant Intuitive Manufacturing Systems, Inc. ("Intuitive") is a Washington corporation headquartered in Kirkland, Washington. Intuitive maintains an office in Kirkland with approximately 50 employees and satellite offices throughout the United States with approximately 70 employees divided into sales and implementation teams that assist current and potential customers. It does not have an office or employees based in North Carolina and does not own property or pay taxes in the State. Of Intuitive's 831 currently active customers, 17 are based in North Carolina and account for 2.84% of its revenue over the last 10 years.

1

Intuitive designs Enterprise Resource Planning ("ERP") software, which organizes information and automates business processes, and Customer Relationship Management ("CRM") software, which tracks and manages information critical to sales and marketing functions. Potential customers (approximately 95%) contact Intuitive through its Web site or other industry-related Web sites where they can "Request Info" or click a "Contact" link to view addresses, phone numbers, and e-mail addresses for Intuitive's corporate headquarters and e-mail addresses for its international offices. Potential customers also reach Intuitive through third-party consultants hired to identify software best suited for their clients' business needs.

Morehead hired a consultant, Michele Stuart, in this capacity and she contacted Intuitive regarding the possibility of Morehead using Intuitive's ERP software. Intuitive's South Carolina based sales team of Bill Huggins and Dennis Walczak visited Morehead twice in July and August, 2004 to discuss this possibility. They visited Morehead a third time on September 2, 2004, when Morehead signed an agreement to pay $116,000 for a license to use ERP and CRM software (the "Agreement").

The Agreement included a separate Software License ("License Agreement") that contained a forum-selection clause which stated in full:

> **12. Applicable Law; Forum:** This Agreement will be interpreted, construed and enforced in all respects in accordance with the local law of the State of Washington, without reference to its choice of laws principles. *Licensee* will not commence or prosecute any suit, proceeding or claim to enforce the provisions of this Agreement or otherwise arising under or by reason of this Agreement, other than in the courts of the State of Washington or the United States District Court for the Western District of Washington at Seattle. *Licensee* hereby irrevocably consents to the jurisdiction and venue of the above-identified courts.

The Agreement also contained an Annual Upgrade and Support Agreement wherein Intuitive was

to provide three years of technical support and upgrades and a Master Services Agreement for future services in conjunction with the software. The Master Services Agreement contained a Law and Jurisdiction clause which stated:

> **Law and Jurisdiction**: This agreement and all statements of work shall be deemed to have been executed and performed in and shall be governed by, construed, interpreted, and the rights of the parties determined in accordance with the laws of the state of Washington.

After Morehead's representative signed the Agreement in Charlotte, North Carolina, it was mailed to Kirkland, Washington where it was signed by Intuitive's CEO. Intuitive then began to implement the software and trained Morehead's staff on its uses. Some training was conducted through the Internet. However, implementation was conducted onsite at Morehead's Charlotte offices and required approximately seven visits by four different Intuitive implementation consultants and frequent telephone and e-mail communications.

Morehead commenced the present suit on February 14, 2006 in North Carolina State court alleging claims for breach of contract, breach of warranties, and negligent misrepresentation. Intuitive removed the suit to this court on March 20, 2006 and now moves to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue to the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

**II. MOTION TO DISMISS**

Where, as here, the court rules on a 12(b)(2) motion relying on the complaint, briefs, and affidavits alone, without conducting an evidentiary hearing, the burden is on the plaintiff to make a prima facie showing that personal jurisdiction exists. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Moreover, all relevant pleading allegations must be construed in a light most favorable to the

plaintiff. Id. To meet its burden, Morehead must satisfy a two-step inquiry. First, Morehead must show that North Carolina's long-arm statute confers personal jurisdiction over Intuitive. Second, Morehead must show that the exercise of personal jurisdiction over Intuitive would not violate the requirements of the due process clause of the Fourteenth Amendment. See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). The North Carolina Supreme Court has liberally construed the North Carolina long-arm statute to extend to the full jurisdictional powers permissible under federal Due Process. Vishay Intertech., Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1065 (4th Cir. 1982). Thus, the two step inquiry merges into a single issue of whether Intuitive has the requisite minimum contacts with North Carolina to satisfy due process.

**A. Long-Arm Statute**

North Carolina's long-arm statute provides twelve bases for asserting personal jurisdiction over foreign defendants. N.C. Gen. Stat. § 1-75.4 (2005). Although Morehead has not indicated which portions are applicable herein, subsection 1-75.4(5) authorizes jurisdiction in cases involving contracts. It states:

> (5) Local Services, Goods or Contracts.--In any action which:
> a. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or
> b. Arises out of services actually performed for the plaintiff by the defendant within this State, or services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant; or
> c. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this State, or to ship from this State goods, documents of title, or other things of value; or
> d. Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction; or
> e. Relates to goods, documents of title, or other things of value actually received by the plaintiff in this State from the defendant through a carrier without regard to where

delivery to the carrier occurred.

N.C. Gen. Stat. § 1-75.4(5) (2005). Morehead's claims arise out of promises made by Intuitive to deliver within this State the software, a thing of value. Thus, North Carolina's long-arm statute authorizes jurisdiction over Intuitive.

**B. Minimum Contacts**

The Supreme Court has fashioned two tests for determining whether a defendant's contacts with the forum state are sufficient to confer personal jurisdiction. If the cause of action is unrelated to the defendant's activities in the forum state, the plaintiff must prove that the contacts are "continuous and systematic" to support the exercise of "general jurisdiction" over the defendant. Helicopteros Nationales de Colombia v. Hall, 466 U.S. 408, 415-16 (1984). If the cause of action is related to or arises out of the defendant's actions within the state, the plaintiff can establish more limited "specific jurisdiction" by proving that:

> "[T]he defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies."

Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945-46 (4th Cir. 1994). "Due process does not preclude assertion of jurisdiction over a defendant based on a single transaction if the transaction gives rise to the cause of action asserted by the plaintiff." Brown v. Am. Broad. Co., Inc., 704 F.2d 1296, 1302 (4th Cir. 1983). However, "a defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'" Mitrano v. Hawes, 377. F.3d 402, 407

(4th Cir. 2004). Specific jurisdiction based on a Web site can be established where a person "(1) directs electronic activity into the forum State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 714 (4th Cir. 2002).

Morehead asserts that Intuitive's contacts in North Carolina are sufficient to confer both general and specific jurisdiction. The court will first address the issue of whether it may exercise specific jurisdiction over Intuitive. Toward this end, Morehead contends that Intuitive has made a substantial connection to North Carolina and thereby subjected itself to specific jurisdiction by (1) sending its employees to Morehead's Charlotte, North Carolina facility on ten occasions, and (2) soliciting North Carolina customers through its Web site.

With regard to Intuitive's Web site claim, Morehead has not alleged that the site played any role in the software licensing transaction at issue. Thus, the Web site cannot establish the basis for specific personal jurisdiction. On the other hand, Morehead has alleged that its claims arise out of representations made by Intuitive's staff during their visits. These visits were carried out at various stages of the business relationship for the purposes of negotiating the Agreement, implementing the software, and attempting to correct implementation malfunctions. Thus, these activities were directed at North Carolina in more than a random, fortuitous, or attenuated way.

Further, asserting jurisdiction over Intuitive does not offend traditional notions of fair play and substantial justice. The burden on Intuitive to defend in North Carolina appears minimal because it was able to make at least ten trips to the State to conduct business with Morehead as well as 17 other active customers. Additionally, there is an interest in trying the case in North Carolina because the

negotiations, payment for the software, and implementation efforts all took place in the State. Because Morehead agreed to Washington in the forum selection and choice of law provision their interest in litigating in North Carolina is not strong. However, the State itself has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). Thus, the court finds that specific jurisdiction exists over Intuitive.

### III. MOTION TO TRANSFER VENUE

Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In evaluating a motion to transfer venue, courts consider numerous factors relevant to "convenience" and "justice." These factors include:

> (1) The plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantages and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriate in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

Republic Mortgage Ins . Co. v. Brightware, Inc., 35 F.Supp.2d 482, 485 (M.D.N.C. 1999).

Before balancing these factors, however, the Court must first determine whether the forum-selection clause at issue is valid under federal law and therefore able to be considered as a factor under § 1404(a). Id at 484. A forum-selection clause in a contract is prima facie valid as a mater of federal common law and should be enforced unless the resisting party

can establish "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).

Morehead's assertion that the clause should not be enforced because there are questions as to whether the contract was for the sale or license of software and because the court has not determined which documents and representations make up the contract do not amount to an assertion of fraud or overreaching. Enforcement of the clause would be reasonable because Intuitive has a connection to the Western District of Washington. Further, Morehead has not shown that "the specified forum is so 'seriously inconvenient,' that it would be deprived of an opportunity to participate in the adjudication." Republic Mortgage Ins. Co. V. Brightware, Inc., 35 F.Supp.2d 482, 485 (M.D.N.C. 1999).

As the court concludes that the forum selection clause is valid and mandatory, the court must next evaluate the other relevant factors that are part of a § 1404(a) analysis. While a valid forum selection clause does not conclusively establish proper venue, it is "a significant factor that figures centrally in the District Court's calculus." Brock v. Entre Comp. Ctrs, Inc., 933 F.2d 1253, 1258 (4th Cir. 1991).

The court finds that out of the eleven factors set out in Republic Mortgage, factors (2), (4), (5), (6), (7), (8), (9), and (11) are neutral. As for factor (1), Morehead's initial choice of forum, the court finds that this factor weighs heavily in favor of a Washington venue. By virtue of the forum selection clause, Morehead's initial forum was Washington. "[I]t is more logical to consider the plaintiff's initial choice of forum to be the forum that is contractually agreed upon." Republic Mortgage, 35 F.Supp.2d at 486. With regard to

factor (3), the relative ease of access to proof, it appears that this favors Intuitive. Concluding that only three Washington-based Intuitive employees will have knowledge relevant to this litigation, Morehead asserts that 79% of the witnesses are located on the East Coast. However, there are at least 14 Intuitive officers and employees based in Kirkland, Washington who handled the sales, implementation, and technical support aspects of Morehead's account. Further, because Morehead's allegations are that Intuitive's software did not perform as promised, it is likely that Intuitive's software developers, who designed and modified the software, will have relevant testimony. Thus, more witnesses and documents relevant to this issue are likely to be found at Intuitive's headquarter's than in North Carolina. Finally, factor (10) weighs in favor of transfer. Pursuant to the choice of law provision in the contract, Washington law will govern this action. A Washington court would certainly be more expert in applying Washington law than a North Carolina court.

The analysis of the above factors and consideration of the forum-selection clause indicates that Washington is the more appropriate forum for this dispute. Accordingly, for the convenience of the parties and witnesses, in the interest of justice,

**IT IS THEREFORE ORDERED** that Intuitive's Motion to Dismiss for Lack of Jurisdiction is hereby **DENIED** and its Motion to Transfer Venue to the Western District of Washington is hereby **GRANTED**. This case is therefore transferred to the Western District of Washington.

Signed: July 11, 2006

*Graham C. Mullen*
Graham C. Mullen
United States District Judge